IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GURSHEEL S. DHILLON M.D. | ) |
| | ) |
| v. | ) |
| | ) |
| STATE OF TENNESSEE HEALTH | ) |
| RELATED BOARD OF MEDICAL | ) No. 3-12-0151 |
| EXAMINERS; LARRY ARNOLD M.D.; | ) |
| KEITH LOVELADY M.D.; MITCHELL | ) |
| MUTTER M.D.; MICHAEL ZANOLLI | ) |
| M.D.; BARRETT ROSEN M.D.; | ) |
| MICHAEL BARON M.D.; NEIL | ) |
| BECKFORD M.D.; DANIEL GARNER | ) |
| M.D.; KIMBERLY BELL M.D.; | ) |
| DENISE MORAN; JANICE STONE; | ) |
| KEN JONES; ANDREA | ) |
| HUDDLESTON; REGINE WEBSTER; | ) |
| JOHN and JANE DOES 1-25; and | ) |
| LIFEPOINT HOSPITAL'S SOUTHERN | ) |
| TENNESSEE MEDICAL CENTER; | ) |
| WILLIAM RUSS SPRAY; and MARK | ) |
| WERT M.D. | ) |

TO: Honorable Aleta A. Trauger, District Judge

# REPORT AND RECOMMENDATION

By Order entered February 10, 2012 (Docket Entry No. 3), this civil action was referred to the Magistrate Judge for case management, decision on all pretrial, nondispositive motions and report and recommendation on all dispositive motions under 28 U.S.C. § 636(b)(1) and to conduct any necessary proceedings under Rule 72 of the Federal Rules of Civil Procedure.

Presently pending are four motions to dismiss:

1) Motion to Dismiss filed by Defendants Tennessee Board of Medical Examiners, Larry Arnold, Keith Lovelady, Mitchell Mutter, Michael Zanolli, Barrett Rosen, Michael Baron, Regine Webster, Neal Beckford, Andrea Huddleston, Denise Moran, Ken Jones, and Janice Stone (Docket Entry No. 55);

2) Motion to Dismiss filed by Defendants Southern Tennessee Medical Center, LLC, incorrectly identified in the Complaint as "LifePoint Hospital's Southern Tennessee Medical Center," William Russell Spray and Mark Wert, (Docket Entry No. 57);

3) Motion to Dismiss filed by Defendant Daniel Garner (Docket Entry No. 75); and

4) Motion to Dismiss filed by Defendant Kimberly Bell (Docket Entry No. 90).

The Plaintiff has filed responses in opposition to the motions. See Docket Entry Nos. 65, 79-80, and 92-93. For the reasons set out below, the Court recommends that the motions be granted and this action be dismissed.

## I. FACTUAL BACKGROUND[1]

The Plaintiff is a physician who was granted a medical license to practice in the State of Tennessee by the Tennessee Board of Medical Examiners ("the Board") on June 25, 1999. Thereafter, he began practicing internal medicine in Winchester, Tennessee, and contracted with the Southern Tennessee Medical Center, LLC ("STMC") to become a staff physician at the STMC's medical facility in Winchester.

The Plaintiff's relationship with STMC deteriorated over the next three years, and in early 2003, STMC placed the Plaintiff under the review of a Peer Review Panel ("the Review Panel"). The Panel recommended that the Plaintiff not be appointed to the STMC active staff. This recommendation was adopted, and the Plaintiff's working relationship with the STMC was terminated in May 2003. The Plaintiff subsequently filed a civil lawsuit against the STMC in the Chancery Court for Williamson County, Tennessee, seeking damages from STMC based on the events that had occurred. The Plaintiff remained in litigation with the STMC for the next several years, with judgments ultimately entered against him in 2006 and 2008.

During this time period, the Plaintiff continued to practice medicine in the Winchester area through arrangements with other medical facilities. However, in 2007, a Notice of Charges and Memorandum for Assessment of Civil Penalties ("Notice of Charges") was filed against the Plaintiff by the Tennessee Department of Health, Division of Health Related Boards ("Department of

---

[1] In providing a synopsis of the factual background of this action, the Court has gleaned from the record pertinent facts which are essentially undisputed by the parties.

Health") regarding the Plaintiff's medical treatment of a patient during 2004 and 2005. After a hearing, the Board entered an Amended Final Order on March 19, 2008, which placed the Plaintiff's medical license on probationary status and required that he meet several conditions in order for the probation to be lifted. See Docket Entry No. 55-1. The conditions were that he: 1) submit to a Physician Assessment by the Center for Personalized Education for Physicians ("CPEP") and comply with all recommendations of the CPEP; 2) enroll in and successfully complete within the first six months of the probation period a three day medical course and provide proof of his compliance with this requirement; and 3) pay the actual and reasonable costs of prosecuting the Notice of Charges brought against him. Id. The Amended Final Order also provided that a violation of the Order shall constitute a separate violation of the Medical Practice Act, Tenn. Code Ann. §§ 63-610 et seq., and would be grounds for further disciplinary action by the Board. Id.

       The Plaintiff did not comply with the Board's requirements, and, in 2009, the Department of Health initiated further proceedings against the Plaintiff by filing a second Notice of Charges and an Amended Notice of Charges alleging that he had failed to comply with the March 19, 2008, Order and that he had engaged in a pattern of continued or repeated malpractice, ignorance, negligence, or incompetence regarding the medical care of 13 patients between January 2000 and December 2002. Prior to hearings before the Board, the Plaintiff filed a complaint in the Chancery Court for Davidson County, Tennessee ("Chancery Action No. 10-449-II"), seeking various forms of relief, including a temporary injunction preventing any hearings on the charges and a stay of the administrative proceedings. See Dhillon v. State of Tn., Health Related Bds., 2010 WL 5109770 (Tn.Ct.App., Dec. 9, 2010). The Plaintiff's attempt to stop the proceedings before the Board was unsuccessful and the Board held hearings on the charges, after which it entered a Final Order on February 3, 2011, finding that the Plaintiff had not complied with the prior directives from the Board and indefinitely suspending the Plaintiff's medical license until such time as he complied with the Amended Final Order of March 19, 2008. See Docket Entry No. 55-2. The Plaintiff was also directed to: 1) consult with Dr. Larry Arnold, the Board's Medical Director, regarding clarification or interpretation of the

CPEP requirements of the February 3, 2011, Order; 2) appear before the full Board prior to the lifting of the suspension of his medical license; and 3) pay the actual and reasonable costs of prosecuting the Notice of Charges brought against him. Id.

Shortly after the Board's suspension of his license, the Plaintiff initiated two new actions in the state courts. On March 21, 2011, he filed a complaint in the Chancery Court of Davidson County, Tennessee ("Chancery Action No. 11-378-II"), against the Department of Health, Larry Arnold, Keith Lovelady, Mitchell Mutter, Michael Zanolli, Barrett Rosen, Ken Jones, Andrea Huddleston, Daniel Garner, Juanita Stone, Denise Moran, and Kimberly Bell alleging violations of his federal constitutional rights, as well as violations of state and federal law, and seeking unspecified declaratory and injunctive relief. See Docket Entry No. 55-3. On April 21, 2011, the state judge entered a final order dismissing the action in its entirety after finding that the Plaintiff had not sought review of the administrative decision of the Board to suspend the Plaintiff's medical license but that the Plaintiff had brought an original action against the individual defendants over which the state court had no subject matter jurisdiction. See Docket Entry No. 55-5. On or about February 21, 2012, the Plaintiff filed a motion to set aside the dismissal and re-open his case, see Docket Entry No. 55-6,[2] which the state court denied on May 29, 2012, after holding a hearing on May 11, 2012. See Docket Entry Nos. 72-1 and 62-2. The plaintiff also filed an action in the Chancery Court of Davidson County, Tennessee ("Chancery Action No. 11-0835-II") under the Tennessee Uniform Administrative Procedures Act seeking to reverse an administrative law judge's denial of his motion for an award of costs and his objections to an affidavit of costs filed by the Department of Health for the costs of the proceedings before the Board. See Docket Entry No. 62-1. By Order entered May 9, 2012, the state judge affirmed the orders of the administrative law judge and dismissed the Plaintiff's action. Id. On June 6, 2012, the Plaintiff filed a notice of appeal from

---

[2] The copy of the Plaintiff's motion that has been filed with the Court has a stamp showing it was received by the State Attorney General on February 23, 2012, but there is no indication when it was actually filed with the Chancery Court. However, the Plaintiff dated his motion February 21, 2012. See Docket Entry No. 55-6.

4

the orders entered in both Chancery Court actions. See Docket Entry No. 72-2. The current status of the appeal is unknown.

In addition to the above noted state administrative and court proceedings, on April 15, 2008, the Plaintiff filed a Voluntary Petition for Bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Middle District of Tennessee, In Re Gursheel S. Dhillon, Case No. 3:08-bk-03109. See Docket Entry No. 57-3. By Order entered July 27, 2012, the Bankruptcy case remains open pending resolution of matters in that case. See Docket Entry No. 609 in Case No. 3:08-bk-03109. The Trustee's Motion to Close the case, filed February 5, 2013, remains pending at this time. See Docket Entry No. 642 in Case No. 3:08-bk-03109.

## II. THE PLAINTIFF'S FEDERAL LAWSUIT

On February 7, 2012, the Plaintiff filed this action pro se. His original Complaint (Docket Entry No. 1) seeks damages and unspecified equitable relief and names as defendants the Board; Larry Arnold, the Board's Medical Director and Consultant; Board members Keith Lovelady, Mitchell Mutter, Michael Zanolli, Barrett Rosen, Michael Baron, Regine Webster, and Neil Beckford; Department of Health employees Denise Moran, Juanita Stone, and Ken Jones; Andrea Huddleston, Department of Health Deputy General Counsel; Daniel Garner and Kimberly Bell, two physicians who provided expert testimony at the Plaintiff's hearings before the Board; Lifepoint Hospital's Southern Tennessee Medical Center;[3] and William Spray and Mark Wert, two STMC employees.

The Plaintiff's motion to amend his complaint (Docket Entry No. 78), was granted by Order entered February 19, 2013 (Docket Entry No. 105). In his Amended Complaint (Docket Entry No. 85), the Plaintiff seeks damages and reinstatement of his medical license and naming as additional defendants: STMC physicians Counsil Rudolph and Elizabeth Reimers; Cumberland

---

[3] The STMC states that it has been incorrectly identified in the Plaintiff's complaint as "Lifepoint Hospital's Southern Tennessee Medical Center." See Docket Entry No. 58, at 2.

5

Health Care Group ("the Cumberland Group"); Cumberland Group physicians Nicholas Petrachko, Louis Koella, and Ron Gordon; and physicians Diane Petrilla and Thomas Zimmerman.[4]

The Plaintiff alleges that, beginning sometime in 2002 and continuing over the course of the next decade, he was wronged in various ways by the named defendants and other "John and Jane Doe" individuals. He contends that the STMC, the Cumberland Group, and the individual physicians associated with the STMC and the Cumberland Group conspired and plotted against him in an effort to silence him, injure his business and contractual relationships, damage his medical practice, and ultimately prevent him from practicing medicine by initiating the peer review proceedings and the subsequent charges before the Board. He alleges that the peer review conducted by the STMC was malicious, unjustified, and flawed and that the charges lodged against him with the Board were likewise unjustified and were part of the overall conspiracy against him. He contends that the proceedings before the Board were biased and unfair and that the Board's ultimate Orders were unsupported and unlawful. The Plaintiff calls into question the qualifications and professional backgrounds of several of the physicians who were involved in the peer review and the proceedings before the Board and contends that he was singled out for investigation, review, and punishment because of retaliation, as well as racial and national origin discrimination. Finally, he alleges that Defendants STMC and the Board have engaged in a pattern and practice of discriminatory, retaliatory, abusive, and harassing conduct.

Based on these allegations, the Plaintiff sets out the following legal claims in his original Complaint: 1) breach of fiduciary duty; 2) economic injury and unfair competition; 3) disparate treatment and racial bias in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq.; 4) malicious prosecution; 5) negligent infliction of emotional injury; and 6) tortious interference with contract and tortious interference with prospective economic advantage. See Docket Entry No. 1, at 22-30. In his Amended Complaint, he sets out additional legal claims

---

[4] There is no indication in the record that the Plaintiff has served process on the additional defendants listed in his Amended Complaint.

under 42 U.S.C. § 1983 for deprivation of his property rights without due process and for violations of his equal protection rights, for violations of 42 U.S.C. § 1981 and 42 U.S.C. § 1985(3), for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., for a violation of the Clayton Act, 15 U.S.C. §§ 1 et seq., and for violations of state law based on theories of negligence, tortious interference with business relations, contract, or economic advantage, libel, and infliction of emotional distress. See Docket Entry No. 85, at 19-24.[5] Although not entirely clear from the Plaintiff's pleadings, he appears to assert that this Court has jurisdiction because of federal question jurisdiction under 28 U.S.C. § 1331.

### III. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is reviewed under the standard that the Court must accept as true all of the allegations contained in the complaint, resolve all doubts in the Plaintiff's favor, and construe the complaint liberally in favor of the pro se Plaintiff. See Kottmyer v. Maas, 436 F.3d 684 (6th Cir. 2006); Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir. 1999); Morgan v. Church's Fried Chicken, 829 F.2d 10, 11-12 (6th Cir. 1987). While a complaint need not contain detailed factual allegations, the Plaintiff must provide the grounds for his entitlement to relief, and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

---

[5] At various points in his Complaint and Amended Complaint, the Plaintiff also refers to the Health Care Quality Improvement Act of 1986 ("HCQIA"), 42 U.S.C. §§ 11101 et seq., and the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. §§ 1320d et seq. See Docket Entry No. 1, at 6-10, and Docket Entry No. 85, at 5, 8-9, and 23. However, it does not appear that the Plaintiff actually asserts a direct cause of action under either of these statutes, and he admits that no private right of action exists under HIPAA. See Docket Entry No. 85, at 5.

7

The factual allegations supplied must be enough to show a plausible right to relief. Twombly, 550 U.S. at 555-61. More than bare assertions of legal conclusions are required to withstand a motion to dismiss and the complaint must contain either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory. Id.; Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436-37 (6th Cir. 1988). The Court need not accept as true legal conclusions or unwarranted factual inferences. See Gregory v. Shelby Cnty., 220 F.3d 433, 446 (6th Cir. 2000); abrogated in part on other grounds, Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res., 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).

## IV. CONCLUSIONS

The Court has reviewed the Defendants' motions seeking dismissal under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the Plaintiff's responses, and the entire record in this action. The initial conclusion of the Court is that the claims and allegations made by the Plaintiff present a legal quagmire which is largely of the Plaintiff's own making. After engaging in several years of litigation at the state level, the Plaintiff appears to view this federal action as a catch-all lawsuit for the events of the last decade and for a hodgepodge of legal theories of recovery, regardless of whether the theories have a sound legal basis and irrespective of whether claims have previously been raised in the state courts. Not surprisingly, the instant action does not readily provide the Plaintiff with the relief he now seeks, either in the form of monetary damages or in the form of reversal of the Board's suspension of his medical license.

As the State Defendants argue, see Docket Entry No. 56, at 21-24, the fact that the instant action has been filed when the Plaintiff has ongoing state judicial proceedings regarding the decision of the Board raises the issue of whether abstention by the Court is proper. In Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the United States Supreme Court counseled federal courts to abstain from granting injunctive or declaratory relief that would interfere with pending state

criminal proceedings except in extraordinary situations. 401 U.S. at 43-46 and 53-54. The Younger doctrine has been extended to apply to both ongoing state civil and administrative proceedings, Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432, 102 S. Ct. 2515, 2521, 73 L. Ed. 2d 116 (1982), and in Watts v. Burkhart, 854 F.2d 839 (6th Cir. 1988), the Sixth Circuit specifically found Younger abstention applicable to administrative actions before the Tennessee Board of Medical Examiners. Pursuant to the Younger doctrine, a federal court should abstain when three criteria are met:

> (1) there are ongoing state judicial proceedings;
>
> (2) the proceedings implicate important state interests; and
>
> (3) there is an adequate opportunity to raise constitutional challenges in the course of the underlying proceeding.

Loch v. Watkins, 337 F.3d 574, 578 (6th Cir.2003); Tindall v. Wayne Cnty. Friend of the Court, 269 F.3d 533, 538 (6th Cir.2001); Hayse v. Wethington, 110 F.3d 18, 20 (6th Cir. 1997).

The Plaintiff's request that the Court overturn the Board's decision suspending his medical license falls squarely into the realm of Younger abstention. The first Younger requirement is satisfied because there are ongoing state judicial proceedings regarding the Board's action against the Plaintiff in the form of the Plaintiff's Chancery Court action which he has now appealed to the state appellate court. The second and third Younger requirements are essentially satisfied given the Court's decision in Watts that the State of Tennessee has an important interest in regulating the physicians licensed to practice within Tennessee and that the state's statutory provision for judicial review of the decisions of the Board provides an adequate opportunity to raise constitutional challenges to the actions of the Board. Watts, 854 F.2d at 846-48. Although Younger abstention was specifically raised by the State Defendants and although the Plaintiff argues against other types of abstention, see Docket Entry 65 at 17-18 and 31-32, the Plaintiff has not shown that Younger should not be applied. Accordingly, this Court should abstain from hearing any claims by the Plaintiff which impugn the lawfulness of the Board's decision regarding the Plaintiff's medical license.

In addition to his request for prospective relief, the Plaintiff also seeks damages from the Defendants based on a multitude of legal theories. Prevailing precedent within the Sixth Circuit requires that in cases in which the Younger abstention applies, a stay of damage claims until resolution of the pending state judicial proceedings, not a dismissal of the action, is the appropriate course of action for the district court to take when the plaintiff's constitutional claims are at issue in the underlying state proceedings yet damages are not an available form of relief in those proceedings. See Nimer v. Litchfield Twp. Bd. of Trustees, _ F.3d. _, 2013 WL 627223 (6th Cir. Feb. 21, 2013); Carroll v. City of Mount Clemens, 139 F.3d 1072, 1075-76 (6th Cir. 1998). In Watts, the Sixth Circuit specifically found a stay of Section 1983 claims appropriate because, although the plaintiff, who was a physician whose medical license had been suspended, could raise in the Chancery Court his federal constitutional challenges to the suspension of his medical license by the Board and seek to overturn the decision of the Board, he would not be able to pursue his damage claims against individual defendants in the Chancery Court action. See Watts, 854 F.2d at 849. In this situation, because dismissal of the damage claims could potentially subject a plaintiff to statute of limitations defenses upon the refiling of his federal claims after resolution of the state proceedings, staying the Section 1983 claims would ensure that the plaintiff's ability to pursue his constitutional claims is not prejudiced. Such a course of action respects both the principle of comity that allows state judicial proceedings to occur free from interference by the federal courts and the principle that federal courts should exercise their jurisdiction where jurisdiction properly exists. See Deakins v. Monaghan, 484 U.S. 193, 202-03, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988).

Nonetheless, review of the Plaintiff's damage claims in this case indicates that the claims should not be stayed. These claims involve legal claims that are not at issue in his underlying state proceedings or are subject to dismissal on immunity grounds which would not result in any preclusive effect on the plaintiff's request for equitable relief in the state proceedings and which would not cause any interference with the ongoing state proceedings. The Court does not read the line of cases requiring a stay of Section 1983 damage claims in Younger cases to require a blanket

10

stay of all claims raised in an action regardless of the nature and potential legal shortcomings of those claims.

To the extent that the Plaintiff seeks to pursue claims based on violations of the Sherman Act or the Clayton Act, he fails to state a claim upon which relief can be granted under these Acts. Although the Plaintiff refers to these two Acts in his pleadings and includes the words "a conspiracy in restraint of trade and/or commerce" in his Amended Complaint, see Docket Entry No. 85, at 21, he fails to actually set out any recognizable theory of recovery under the Acts or show how any provision in either Act has been violated. His fleeting and cursory references fall far short of stating a plausible claim under these Act, which require a certain measure of specificity regarding what is alleged to be unlawful and how the plaintiff has been injured because of violation of the Acts. See Twombly, supra; Re/Max Intern v. Realty One, Inc., 900 F.Supp. 132 (N.D. Ohio 1995), aff'd, 173 F.3d 995 (1999), cert denied, 535 U.S. 937, 122 S.Ct. 1539, 152 L.Ed.2d 466 (2002); Axis, S.P.A. v. Micafil, Inc., 870 F.2d 1105, 1110-11 (6th Cir.), cert. denied, 493 U.S. 823, 110 S.Ct. 83, 107 L.Ed.2d 49 (1989); Hodges v. WSM, Inc., 858 F. Supp. 708 (M.D. Tenn. 1992). Merely positing a vague and cursory theory of legal liability that is unsupported by specific factual allegations does not state a claim for relief which survives a motion to dismiss. See Iqbal, 556 U.S. at 678-79.

The Plaintiff's claims for violations of Title VII and the ADA warrant dismissal because the Plaintiff has not shown that he pursued and exhausted his administrative remedies for such claims. Exhaustion of administrative remedies through the timely filing of a charge of discrimination with the appropriate agency is a necessary prerequisite for any claims brought under Title VII or the ADA. See Parry v. Mohawk Motors of Mich., 236 F.3d 299, 308 (6th Cir. 2000), cert. denied, 533 U.S. 951 (2001); Puckett v. Tennessee Eastman Co., 889 F.2d 1481, 1486 (6th Cir. 1989). The Court also notes that only the Plaintiff's past employers would be subject to liability under Title VII and the ADA, and neither statute provides for the imposition of liability against individual defendants who do not otherwise qualify as employers. See Sullivan v. River Valley Sch. Dist., 197 F.3d 804, 808 n.1 (6th Cir. 1999), cert. denied, 530 U.S. 1262 (2000); Hiler v. Brown, 177 F.3d 542, 546 (6th Cir.

11

1999); Wathen v. General Elec. Co., 115 F.3d 400, 405 (6th Cir. 1997). Finally, the Eleventh Amendment to the United States Constitution bars any damages claims brought under Title I of the ADA against the Board or the state officials in their official capacities. See Board of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 374, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001).[6]

With respect to the Plaintiff's claims that he is entitled to damages because of violations of his federal civil rights, he cannot obtain monetary damages from the Board under the federal civil rights statutes. The Eleventh Amendment to the United States Constitution bars a plaintiff from pursuing damage claims in federal court against a state or a state agency unless the state has waived its sovereign immunity by consenting to such a suit or unless a valid congressional override of immunity exists. See Kentucky v. Graham, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Turker v. Ohio Dep't. of Rehab. & Corr., 157 F.3d 453, 456 (6th Cir. 1998). Tennessee has not consented to being sued under the civil rights statutes and congressional overrides do not exist for these statutes. Freeman v. Michigan Dep't. of State, 808 F.2d 1174, 1179 (6th Cir. 1987); Berndt v. State of Tenn., 796 F.2d 879, 881 (6th Cir. 1986); Henderson v. Southwest Tenn. Comm. College, 282 F.Supp.2d 804, 807 (W.D. Tenn. 2003). The Plaintiff argues that the Board has waived its Eleventh Amendment sovereign immunity or consented to his civil rights claims because the Board filed a claim in his Bankruptcy proceeding. See Docket Entry No. 65, at 20-23. The Plaintiff's argument is nonsensical. The Congressional override and abrogation of sovereign immunity that is contained in the Bankruptcy Code is limited to Bankruptcy proceedings and has no applicability to the instant action.

Eleventh Amendment immunity also extends to damage claims against any Board member or other state official who is sued in his or her official capacity because damage claims against any of the state officials who are named in their official capacities are essentially claims against the

---

[6] The Court notes that, even with the benefit of a liberal construction, it is virtually impossible to decipher from the original Complaint the exact nature of the Plaintiff's purported claim under the ADA. See Complaint (Docket Entry No. 1), at 24-26.

Board or the State. See Cady v. Arenac Cnty., 574 F.3d 334, 344 (6th Cir. 2009). In an official capacity action, a plaintiff seeks damages not from the individually named defendant, but from the entity for which the defendant is an agent, Pusey v. City of Youngstown, 11 F.3d 652, 657 (6th Cir. 1993), and "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." Graham, 473 U.S. at 166. Furthermore, for the purposes of claims brought under Section 1983, neither a State, a state agency, nor an official acting in his official capacity is a "person" who is subject to liability for damages under that statute. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 109 S.Ct. 2304, 2311-12, 105 L.Ed.2d 45 (1989); Hardin v. Straub, 954 F.2d 1193, 1198 (6th Cir. 1992).

To the extent that the Plaintiff sues the state officials in their individual capacities for damages based on alleged civil rights violations, the Eleventh Amendment does not bar such claims. However, the Board members are shielded from damages for actions they took as members of the Board related to the administrative proceedings by the principle of absolute quasi-judicial immunity. It is settled law that quasi-judicial immunity provides members of the Tennessee Board of Medical Examiners with immunity when sued individually for damages in connection with actions undertaken to revoke or suspend a physician's medical license. See Watts, supra. See also Williams v. Michigan Bd. of Dentistry, 39 Fed. Appx. 147, 2002 WL 927019, 2002 WL 927019 (6th Cir. May 7, 2002) (quasi-judicial immunity applies to members of Michigan Board of Dentistry for actions taken in suspension proceedings). The protection of quasi-judicial immunity is a broad immunity and does not hinge upon the specific facts or the charges that are part of the revocation proceedings that were before the Board. The Plaintiff fails to set forth any persuasive basis for why the immunity rule in Watts should not apply to the instant case.[7]

---

[7] Defendants Arnold, Moran, Jones, and Stone are not members of the Board but are state employees with the Department of Health. However, their alleged actions as administrative staff for the Board are so integral and intertwined with the administrative hearing process of the Board that these defendants would likewise be entitled to the shield of absolute quasi-judicial immunity. See Cooper v. Parrish, 203 F.3d 937, 950 (6th Cir. 2000); Bush v. Rauch, 38 F.3d 842, 847 (6th Cir. 1994).

Defendants Garner and Bell are likewise shielded from damage liability on any claims based on their testimony before the Board as expert witnesses in the Plaintiff's hearings. It is well-settled that witnesses in court proceedings are absolutely immune from civil rights claims brought against them based upon their testimony. See Briscoe v. LaHue, 460 U.S. 325, 330-31, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); Spurlock v. Satterfield, 167 F.3d 995, 1001 (6th Cir. 1999). This witness immunity applies to administrative hearings. See Lewis v. Drouillard, 2010 WL 3464308, *3 (E.D.Mich. Aug. 30, 2010) (witness immunity applies to deponent who provided a deposition for use in a workers' compensation proceeding); Kogan v. Tennessee Bd. Of Dentistry, 2008 WL 842462, **2-6 (M.D.Tenn. March 28, 2008) (witness immunity applies to witness who provided testimony before the Tennessee Board of Dentistry). The Plaintiff's arguments to the contrary and his apparent contention that neither Defendant was a "witness" because they did not personally observe the incidents about which they testified lack merit and are legally spurious.

The only apparent role of Defendant Huddleston is that she was the legal representative of the Department of Health before the Board and prosecuted the charges brought against the Plaintiff. Prosecuting attorneys are entitled to absolute immunity from liability for actions within the scope of their prosecutorial duties. Imbler v. Pachtman, 424 U.S. 409, 420, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). A prosecutor's decision to initiate charges and pursue them is entitled to absolute immunity. Imbler, 424 U.S. at 431; Kalina v. Fletcher, 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). Prosecutorial immunity protects prosecutors from liability even if their acts were in error, were wrongful, or were done maliciously. Grant v. Hollenbach, 870 F.2d 1135, 1138 (6th Cir. 1989). While this immunity is usually raised within the context of acts taken in the prosecution of criminal proceedings, the protection of prosecutorial immunity also extends to proceedings before administrative tribunals and boards. See Butz v. Economou, 438 U.S. 478, 508-517, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); Brown v. California Dep't of Corr., 554 F.3d 747, 750-51 (9th Cir. 2009); Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1489-90 (10th Cir. 1991).

Thus, the Plaintiff fails to assert any viable federal claims against any of the State Defendants that would be appropriately stayed pending resolution of the state proceedings.

With respect to Defendants STMC, Spray and Wert, the Plaintiff likewise fails to assert any viable federal claim against them. For the reasons set out supra, the Plaintiff fails to state a claim under the Sherman Act, the Clayton Act, Title VII, the ADA, HCQIA, and HIPAA. Although the Plaintiff brings claims against these individuals under Section 1983, these Defendants are not state officials but are merely private entities or individuals and have not acted under color of state law, which is a necessary requirement for any civil rights claim under Section 1983. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). The Court has reviewed the Plaintiff's Complaint and Amended Complaint and finds that he fails to set forth any plausible and supported theory that any of the private defendants acted in concert with the Board or its members in a conspiracy to violate the Plaintiff's constitutional rights in any manner which would render the private defendants liable under 42 U.S.C. § 1983. The Plaintiff has similarly not sufficiently pled plausible claims under 42 U.S.C. § 1985(3) or 42 U.S.C. § 1981. To be sure, the Plaintiff is a dissatisfied recipient of the severe sanction of the suspension of his medical license issued at the hands of the Board, and the Plaintiff may very well be able to point to events that he views as unfavorable or unfair. However, his attempt to paint a picture of a far-reaching and decade long conspiracy against him based on isolated events and his perceptions of unfairness is simply conclusory and self-serving and fails to provide the level of specificity and support required for such claims. See Francis v. Giacomelli, 588 F.3d 186, 195-97 (4th Cir. 2009); Gutierrez v. Lynch, 826 F.2d 1534, 1538-39 (6th Cir. 1987); Ashiegbu v. Purviance, 76 F.Supp.2d 824, 830-31 (S.D. Ohio 1998). The Plaintiff's contentions that: 1) a conspiracy existed between the Board members and private individuals; 2) that this conspiracy was for the purpose of violating the plaintiff's civil rights;

15

and 3) a class or race based animus was involved in the conspiracy, are simply unsupported and are not sufficient to state viable legal claims against these individuals.[8]

In addition to alleging claims under federal law, the Plaintiff raises a number of state law claims. However, dismissal of the state law claims is warranted because the Court should decline to exercise jurisdiction over these claim. Upon the dismissal of the Plaintiff's federal claims, the Court no longer has original jurisdiction over claims brought by the Plaintiff and the provisions of 28 U.S.C. § 1367(c) apply. This section provides that:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection(a) if --
>
> . . . .
>
> (3) the district court has dismissed all claims over which it has original jurisdiction,

The decision of whether to retain jurisdiction over state law claims upon the dismissal of the federal law claims asserted in an action is left to the broad discretion of the Court. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350-52, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); Musson Theatrical, Inc. v. Federal Express Corp., 89 F.3d 1244, 1254 (6th Cir. 1996). In considering whether to continue to exercise supplemental jurisdiction over such state law claims, the Court must consider the provisions of Section 1367(c) and the factors the United States Supreme Court outlined in Cohill, 484 U.S. at 350-51, and United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). These factors include judicial economy, convenience, fairness, and comity. Cohill, 484 U.S. at 350. Although not mandatory or absolute, the general rule is to decline to exercise jurisdiction over supplemental state law claims when all federal claims are eliminated from a case before trial. Musson, 89 F.3d at 1254-55 (gathering cases from the Sixth Circuit Court of

---

[8] The Court also notes that a one year statute of limitations would apply to any claims brought under 42 U.S.C. §§ 1983, and 1985(3), and would bar claims accruing more than one year prior to the complaint being filed on February 7, 2012, would be barred. See Roberson v. Tennessee, 399 F.3d 792, 794 (6th Cir. 2005); Jackson v. Richards Medical Co., 961 F.2d 575, 578 (6th Cir.1992); Berndt, 796 F.2d at 883. The bulk of the allegations and claims made in the Plaintiff's Complaint and Amended Complaint concern events that occurred well before, and in some cases, many years before February 7, 2011.

Appeals that follow the general rule). In the instant action, the balance of factors weighs in favor of dismissal of the Plaintiff's state law claim without prejudice so they can be pursued in the state courts if he so wishes.[9]

In his Amended Complaint, the Plaintiff seeks to assert claims against defendants STMC physicians Counsil Rudolph and Elizabeth Reimers, the Cumberland Group, Cumberland Group physicians Nicholas Petrachko, Louis Koella, and Ron Gordon, and physicians Diane Petrilla and Thomas Zimmerman. See Docket Entry No. 85. The purported claims against these defendants are essentially the same as those asserted against the other defendants to this action, and the claims suffer from the same fatal shortcomings which warrants their dismissal for failure to state a claim against any of these defendants.[10]

## RECOMMENDATION

Based on the foregoing, the Court respectfully RECOMMENDS that the Defendants' Motions to Dismiss (Docket Entry Nos. 55, 57, 75, and 90) be GRANTED as follows:

1) the Plaintiff's claim for injunctive relief be DISMISSED WITHOUT PREJUDICE based on Younger abstention;

2) the Plaintiff's claims for monetary relief under federal statutes be DISMISSED WITH PREJUDICE; and

---

[9] The STMC Defendants raise the defenses of res judicata and judicial estoppel based on the prior state lawsuit against them which was dismissed and based upon the Plaintiff's Bankruptcy proceeding. See Docket Entry No. 58, at 5-9. Given the Court's other basis for dismissal of this action, the Court declines to address either of these arguments. Unless the Trustee actually abandoned the Plaintiff's claims, this case should be prosecuted by the party in interest, i.e., the Bankruptcy Trustee, not by the Plaintiff. See Bauer v. Commerce Union Bank, 859 F.2d 438, 440 (6th Cir. 1988), cert denied sub nom. Bauer v. Waldschmidt, 489 U.S. 1079, 109 S.Ct. 1532, 103 L.Ed.2d 836 (1989).

[10] This Report and Recommendation and the fourteen day period for objections to be filed by the Plaintiff satisfy the procedural requirements for a sua sponte grant of dismissal under Rule 12(b)(6) for failure to state a claim. See Morrison v. Tomano, 755 F.2d 515, 516-17 (6th Cir. 1984). See also Yashon v. Gregory, 737 F.2d 547, 552 (6th Cir. 1984).

3) the Plaintiff's claims under state law be DISMISSED WITHOUT PREJUDICE because the Court should decline to exercise supplemental jurisdiction over these claims under 28 U.S.C. § 1367(c).

The Court further recommends that the claims against Defendants Counsil Rudolph, Elizabeth Reimers, the Cumberland Health Care Group, Nicholas Petrachko, Louis Koella, and Ron Gordon, Diane Petrilla, and Thomas Zimmerman be DISMISSED from this action sua sponte in the same manner as set out herein for the claim against all other defendants.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of the Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

JULIET GRIFFIN
United States Magistrate Judge